# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAK VARDUMYAN,<br><br>　　　　　　　Petitioner,<br><br>　v.<br><br>KRISTI NOEM, et al.,<br><br>　　　　　　　Respondents. | Case No. 5:26-CV-00641-MRA-MAA<br><br>**ORDER GRANTING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDERING IMMEDIATE RELEASE FROM CUSTODY [4]** |

Before the Court is Petitioner's Ex Parte Application for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 4. Petitioner requests that the Court enjoin Respondents from transferring him out of the judicial district during the pendency of this action, order his immediate release from custody and reinstatement of his previous supervisory conditions, and bar his re-detention unless and until the government proves by clear and convincing evidence that he is a flight risk or danger to the community. *Id.* at 2. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application, **ORDERS** Respondents to release Petitioner forthwith, and **ENJOINS** his further detention unless and until he is provided proper due process necessary for the revocation of an Order of Supervision ("OSUP").

Additionally, the Court **GRANTS** the Application's request to dispense with the filing of a bond.

## I. BACKGROUND

Petitioner Sevak Vardumyan ("Petitioner") filed this habeas petition on February 11, 2026. ECF 1 ("Pet."). The petition alleges as follows:

Petitioner is a native of the former Soviet Union ("USSR") who lawfully entered the United States in 1992 when he was three years old. *Id.* ¶¶ 1–2; ECF 1-1 ("Vardumyan Decl.") ¶ 3. On September 22, 2016, an immigration judge ordered Petitioner's removal to Armenia. Pet. ¶ 2. Petitioner was detained at Theo Lacy Orange County Jail for three months in approximately 2017 pursuant to the order of removal. *Id.* ¶ 3; Vardumyan Decl. ¶ 5. Also in approximately 2017, Immigration and Customs Enforcement ("ICE") released Petitioner on an order of supervision because Armenia refused to accept him. *Id.* The conditions of Petitioner's order of supervision ("OSUP") were that he complete regular check-ins with ICE and not commit any crimes. Vardumyan Decl. ¶ 6. Post-release, Petitioner was charged with multiple crimes (including identity theft, controlled substance offenses, and vehicle code offenses); however, Petitioner continued to comply with his ICE check-ins. Pet. ¶ 4; Vardumyan Decl. ¶¶ 7–8. Petitioner states in his declaration that he "expect[s] to be exonerated of all charges." Vardumyan Decl. ¶ 7.

On December 9, 2025, Petitioner appeared for an ICE check-in and was informed that his order of supervision had been revoked due to his two arrests in 2025 and ICE's determination that Petitioner's removal was imminent. Pet. ¶ 4. Petitioner was not provided with an interview to contest his re-detention. *Id.* Petitioner was instead transferred to and is currently being held at the Adelanto Detention Facility in Adelanto, California. *Id.*

In the instant TRO Application, Petitioner requests that the Court enjoin Respondents Kristi Noem, Secretary of the United States Department of Homeland Security ("DHS"); Pamela Bondi, Attorney General of the United States; Todd Lyons, Acting Director of ICE; Jaime Rios, Acting Director of the Los Angeles Field Office of

ICE; Fereti Semaia, Warden of the Adelanto ICE Processing Center; ICE; and DHS (collectively, "Respondents" or the "government") from continuing to detain him. ECF 1, 4. Petitioner argues that "his re-detention is depriving him of constitutional rights and causing immediate and irreparable injury in the form of the unlawful deprivation of his liberty." *Id.* at 2–3.

On February 14, 2026, Respondents filed an Opposition to the TRO Application. ECF 7. Respondents argue that Petitioner failed to comply with the conditions of his order of supervision and that Petitioner's travel documents to Armenia have been requested. *Id.* at 2. Respondents further assert that, in their "recent experience, the government of Armenia is issuing travel documents when ICE has made such requests for Armenian nationals, including those who are citizens of the former USSR." *Id.* at 4.

On February 16, 2026, Petitioner filed a Reply to Respondents' Opposition, in which Petitioner argues that Respondents inaccurately state that Petitioner has been convicted of (rather than merely charged with) crimes in 2025, and that Respondents do not claim that Petitioner was afforded any type of hearing or informal interview prior to his re-detention. ECF 9 at 4. Petitioner further argues that he is likely to succeed on the merits of his Petition because Respondents did not follow proper release revocation procedures and did not have evidence Petitioner could be timely removed at the time they rescinded his order of supervision. ECF 9 at 6–10.

## II.     LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success

on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Courts in this circuit also employ "an alternative 'serious questions' standard . . . known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff." *Cottrell*, 632 F.3d at 1132.

### III. DISCUSSION

Having reviewed and considered the filings and applicable law, the Court finds that Petitioner is likely to succeed on the merits or at least has raised serious questions going to the merits of his procedural due process claim, that Petitioner has established irreparable harm, and that the balance of hardships tips sharply in Petitioner's favor.

#### A. Likelihood of Success on the Merits

The detention and removal of noncitizens[1] ordered removed is governed by 8 U.S.C. § 1231 ("Section 1231"). Section 1231 states that, once "an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period').")[2] *Id.* § 1231(a)(1)(A). "During the

---

[1] The Court prefers the term noncitizen, but uses the terms noncitizen and alien interchangeably, given the statutory and regulatory language at issue.

[2] Section 1231 provides that the "removal period shall be extended beyond a period of 90 days . . . if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C). Although the government argues that Petitioner has refused to conduct a travel document interview, it

removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Once the removal period passes and the "alien does not leave or is not removed . . . the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General[,]" which include statutorily mandated conditions. *Id.* § 1231(a)(3).

The revocation of release on supervision after the expiration of the removal period—*i.e.*, the revocation of an OSUP, like the one issued to Petitioner—is governed by 8 C.F.R. § 241.13(i). *Tiraturian v. Bondi*, No. 5-25-CV-03239-WLH-DFM, 2025 WL 4061565, at *2 (C.D. Cal. Dec. 8, 2025). Under that regulation, an OSUP may be revoked: (1) if the noncitizen "violates any of the conditions of release," *id.* §§ 241.13(i)(1), 241.4(l)(1); or (2) if it is determined "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Additionally, certain designated officials may revoke an OSUP as an act of discretion. *Id.* § 241.4(l)(2).

The regulations also establish "revocation procedures" that must be followed, including that the noncitizen "will be notified of the reasons for revocation of his or her release" and receive an "initial informal interview promptly" after being detained, to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). During such an interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* "Together, the statutory and regulatory language sets forth three requirements to protect a noncitizen's right to due process: (1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a 'prompt' opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official." *Tiraturian*, 2025 WL 4061565, at *2.

---

does not invoke § 1231(a)(1)(C) or otherwise argue that subsection authorizes detention here.

The government appears to offer two bases for the revocation of Petitioner's OSUP: the significant likelihood of removal in the reasonably foreseeable future, and criminal charges against Petitioner which demonstrate that Petitioner violated the conditions of the OSUP. ECF 7 at 2. The Court addresses each in turn.

First, the regulations permit revocation of release of a noncitizen for whom a final removal order has been issued upon a determination that "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). But even when such a determination is made, the regulations nevertheless require that the revocation procedures, including written notice and a prompt informal interview and opportunity to submit evidence, be observed, so that the noncitizen may show that no such likelihood exists. *Id.* ¶ 241.13(i)(3).

As a threshold matter, the generic language in the Notice of Revocation issued to Petitioner merely states that ICE has determined a "significant likelihood of removal in the near future," without specifying changed circumstances or providing any factual support. ECF 7-1 at 5. Such language has been found to be procedurally deficient and noncompliant with § 241.13(i)(2). *See Morales Sanchez v. Bondi*, No. 5:25-CV-02530-AB-DTB, 2025 WL 3651899, at *5 (C.D. Cal. Dec. 5, 2025); *see also Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 225–26 (D. Mass. 2025) (holding generic notice stating only that officials "review[ed] [the] file" and determined "there are changed circumstances" failed to comply with the regulation or provide meaningful notice sufficient for due process).

Citing *Zadvydas v. Davis*, 544 U.S. 678 (2001), Respondents argue that Petitioner bears the initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. ECF 7 at 8. In *Zadvydas*, the Supreme Court considered a noncitizen who had been detained and never released following a final order of removal. *Zadvydas*, 533 U.S. at 701. In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing."

But as several district courts have recognized, *Zadvydas*'s burden-shifting framework does not apply to noncitizens who are *re-detained* pursuant to the revocation of an OSUP. *Lu v. Joyce*, No. 2:26-CV-00041-SDN, 2026 WL 352447, at *3 (D. Me. Feb. 9, 2026); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); *Saqib v. Andrews*, No. 1:25-CV-2035 DC CSK P, 2026 WL 350830, at *3 (E.D. Cal. Feb. 9, 2026), *report and recommendation adopted sub nom,*. No. 1:25-CV-02035-DC-CSK (HC), 2026 WL 440566 (E.D. Cal. Feb. 17, 2026); *Espada v. Doe*, No. 5:25-CV-02983-JWH-KES, 2026 WL 181539, at *5 (C.D. Cal. Jan. 20, 2026), *report and recommendation adopted*, No. 5:25-CV-02983-JWH-KES, 2026 WL 192150 (C.D. Cal. Jan. 23, 2026). As those cases and the regulations themselves make clear, when the government revokes release to effectuate removal, the *government* bears the burden of showing "a significant likelihood that the [noncitizen] may be removed." *See Andrews*, 2026 WL 350830, at *3.

According to the government, there is a significant likelihood that Petitioner will be removed to Armenia in the reasonably foreseeable future because on January 9, 2026, ICE sent a travel document request to Armenia, and "[i]n Respondents' experience, Armenia is issuing travel documents for Armenian nationals, including those who are citizens of the former U.S.S.R." ECF 7 at 2. The government, however, makes no effort to explain why travel documents were not previously obtained years ago, when the removal order against Petitioner was first issued. *See Hoac v. Becerra,* 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."). Moreover, more than a month has passed since ICE purportedly sent the travel document request, and the government offers no update on the status of that request or specific reasons, other than vague assertions based on its "experience," why it expects documents to be issued in the reasonably foreseeable future. At best, the government has demonstrated a "mere possibility that removal will occur," which is insufficient to carry its burden of showing a "significant likelihood" of

removal. *Yan-Ling X. v. Lyons,* No. 1:25-CV-01412-KES-CDB, at *4 (HC), 2025 WL 3123793 (E.D. Cal. Nov. 7, 2025).

There is another fundamental flaw in the government's position—"[s]ection 241.13 requires that the determination that changed circumstances will result in the noncitizen's removal in the reasonably foreseeable future is made *before* the removable noncitizen has had their release revoked." *Andrews*, 2026 WL 350830, at *5 (citing cases); *see* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967, 56971 (Nov. 14, 2001) (codified at 8 C.F.R. pts. 3, 241) ("[I]n any case where, based on a change of circumstances, the Service later makes a determination that there is a significant likelihood that the Service *subsequently* will be able to remove the alien . . . in the reasonably foreseeable future, the custody provisions of § 241.4 will again apply. *In that event*, the Service may return the alien to detention in connection with the removal . . . ." (emphasis added)). The only changed circumstance regarding the likelihood of Petitioner's imminent removal that the government can point to is ICE's January 9, 2026, renewed request for Petitioner's travel documents from Armenia. That circumstance arose only *after* Petitioner was detained and his OSUP was revoked on December 9, 2025. The government does not identify any "changed circumstances" that existed at the time it issued the Notice of Revocation of Release and detained Petitioner. In essence, the government contends that its post hoc actions can retroactively cure any regulatory and constitutional violations, but that is not the law.

Second, the government half-heartedly argues that Petitioner's "undisputed[] criminal history" demonstrates that he failed to comply with the conditions of the OSUP, which warrants Petitioner's re-detention. ECF 7 at 2. But this, too, appears to be a thinly veiled post hoc justification for Petitioner's detention, as the Notice of Revocation of Release does not identify any criminal charges as the basis for the revocation. *See* ECF 7-1 at 5.[3]  To the extent that the government relies on criminal charges as a reason to revoke

---

[3] According to Petitioner's declaration, he received a letter stating that his OSUP was revoked because he violated the terms of his release and because ICE determined that

-8-

Petitioner's OSUP, the regulations require that Petitioner be given written notice of that reason, and the government violated the regulations and Petitioner's due process rights by failing to provide it. *See Tran v. Noem*, No. 3:25-CV-02391-BTM-BLM, 2025 WL 3005347, at *3 (S.D. Cal. Oct. 27, 2025); *see also Tiraturian*, 2025 WL 4061565, at *4 (finding notice of revocation "facially deficient" where it "contain[ed] no factual allegations that led to the custody redetermination").

In sum, the government has failed to demonstrate a significant likelihood that Petitioner's removal is reasonably foreseeable, and even if it had, the written notice it gave to Petitioner stating the reasons for the revocation of his OSUP was plainly deficient and violated the applicable regulations.

Moreover, the government does not even attempt to argue that it provided Petitioner with a "prompt" opportunity to present evidence or explain why revocation was not warranted. In arguing that release revocation procedures were properly followed, the government highlights that after being charged with "multiple crimes" in 2024 and 2025, "Petitioner was ultimately arrested and detained, and he was given a Notice of Revocation." ECF 7 at 6. Tellingly, the government does not acknowledge that the Notice of Revocation nowhere mentions criminal charges, nor does it contend that it provided the necessary interview or provided Petitioner with the opportunity to "submit any evidence or information that he . . . believes shows there is no significant likelihood he . . . will be removed in the reasonably foreseeable future, or that he . . . has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3). Nor is there any indication that the government

---

they could executive the removal order soon. ECF 4-3 ¶ 9. The Notice of Revocation of Release submitted by respondents (ECF 8 at 50) does not reference the criminal charges. But to the extent that Petitioner did receive conflicting information about the grounds for revocation, that is an independent ground to deem the notice inadequate under 8 C.F.R. § 241.13(i)(3). *Kesheshian v. Noem*, No. 5:25-CV-03478-MWC-DFM, 2025 WL 4227216, at *4 (C.D. Cal. Dec. 24, 2025) ("Where a Notice of Revocation of Release is unclear, confusing, or fails to identify with specificity a change in recent circumstances, a Court may deem it inadequate under 8 C.F.R. § 241.13(i)(3).").

undertook "an evaluation of any contested facts relevant to the revocation" or made a post-detention "determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.13(i)(3). Put simply, it appears undisputed that the government did not provide the process demanded by 8 C.F.R. § 241.13(i)(3). These procedural deficiencies have led numerous other district courts to find procedural due process violations. *See, e.g.*, *Rinku v. Bondi*, No. 5:26-CV-00409-MEMF-ADS, 2026 WL 323281, at *5 (C.D. Cal. Feb. 6, 2026) (finding likelihood of success on procedural due process claim where petitioner "was given no opportunity to be heard at all"); *McSweeney v. Warden of Otay Mesa Det. Facility*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (finding ICE failed to follow regulation where petitioner was not given opportunity to respond "at a meaningful time"); *Zheng v. Marin*, No. 5:26-CV-00519-ODW (MAAX), 2026 WL 323282 (C.D. Cal. Feb. 6, 2026) (finding likelihood of success on merits where "Respondents failed to give Zheng meaningful notice of his OSUP revocation and an informal interview, in violation of their own regulations"); *Morales Sanchez*, 2025 WL 3651899, at *6 (finding absence of "required interview" and "Petitioner's inability to respond" "demonstrates that Petitioner's detention is likely unlawful").

"It is well established that government agencies are required to follow their own regulations." *Delkash v. Noem*, No. 5:25-cv-01675-HDV (AGRx), 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Courts in this District and around this Circuit have "unequivocally found that the government's failure to follow its release procedures—in particular the failure to give a detainee the required notice and interview—renders the re-detention unlawful." *Id.*; *see, e.g., Palacios v. Marin*, No. 5:26-cv-00132-AB (SPx), 2026 WL 166903, at *2 (C.D. Cal. Jan. 16, 2026) (granting TRO based on the government's failure to provide requisite notice and interview under 8 C.F.R. § 241.13); *Mahalati-Shirazi v. Noem*, No. 5:26-cv-00117-MWC (SSCx), 2026 WL 175654, at *5 (C.D. Cal. Jan. 18, 2026) (same). For the foregoing reasons, the Court concludes that the government failed to follow its own

procedures in revoking Petitioner's OSUP and Petitioner is therefore likely to succeed on the merits of his due process claim.

B. **Irreparable Harm**

Petitioner claims that continued unlawful detention in violation of his statutory, regulatory, and constitutional rights has caused irreparable harm warranting preliminary relief. ECF 4-1 at 17–18. The Court agrees, because "[d]eprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)). The government does not meaningfully contest that unlawful detention constitutes irreparable harm but instead insists that Petitioner is subject to a final removal order which the government has taken steps to effectuate. ECF 7 at 10. This circular reasoning fails to address the procedural due process rights at stake and the harm that is caused by the government's failure to abide by its own regulations and rules.

Given the Court's conclusion that Petitioner is likely to succeed on the merits of his due process claim with respect to his wrongful re-detention, the Court finds that the irreparable harm factor weights strongly in favor of granting the Application.

C. **Other *Winter* Factors**

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues that the balance of equities and the public interest weigh in favor of granting the TRO because there is no public interest in prolonging Petitioner's unlawful detention and there is no interest that outweighs the irreparable injury to Petitioner. ECF 4-1 at 18–19. Respondents argue that the significant public interest in enforcing immigration laws outweighs Petitioner's private interest. ECF 7 at 10. The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding balance of hardships weighed in favor of plaintiffs who credibly alleged that the

government was violating the Immigration and Nationality Act). That the government has an interest in enforcing the immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, the balance of equities and the public interest tip sharply in favor of issuing the TRO.

### D. <u>Scope of Relief</u>

"Injunctive relief should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)). Petitioner asks the Court to order his immediate release and reinstate the OSUP "until such time as Respondents properly comply with governing regulations and demonstrate that his removal is reasonably foreseeable." ECF 4-1 at 20. Petitioner also requests that the Court enjoin Respondents from transferring him out of this judicial district, to enjoin removal without notice and an opportunity to be heard, and to enjoin Respondents from removing Petitioner to any country where he will be immediately imprisoned. *Id.* Respondents argue that "the appropriate injunctive remedy for any procedural deficiency would not be automatic release from custody, but rather to remedy the specific procedural deficiency." ECF 7 at 6.

The government does not propose how it might "remedy the specific procedural deficienc[ies]" identified herein, but in any event, any such belated offer to do so rings hollow and "would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process." *Esmail v. Noem*, No.

2:25-CV-08325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025). As many courts in this District and Circuit have similarly concluded, the only way to restore the "status quo" "is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his OSUP." *Id.*; *see also*, *e.g.*, *Ovikian v. Noem*, No. 5:26-CV-00158-WLH-E, 2026 WL 242700, at *6 (C.D. Cal. Jan. 23, 2026); *Nguyen v. Noem*, No. 5:25-CV-03191-WLH-MAR, 2025 WL 4058239, at *3 (C.D. Cal. Dec. 19, 2025); *Yan-Ling*, 2025 WL 3123793, at *7; *Nguyen v. Scott*, 796 F. Supp. 3d 703, 749 (W.D. Wash. Aug. 21, 2025) (ordering immediate release of noncitizen detained in violation of regulations).

Petitioner also requests an order prohibiting his transfer outside this district, enjoining removal without notice and an opportunity to be heard, and enjoining removal to a third country where he is likely to be imprisoned. Petitioner's Application does not substantively explain why such relief is warranted. "District courts in immigration habeas actions . . . retain the inherent equitable authority to restrict the transfer of petitioners during the pendency of the proceedings," *Quijada Cordoba v. Knight*, No. 1:25-CV-00605-BLW, 2025 WL 3228945, at *4 (D. Idaho Nov. 19, 2025) (citing *Oliveros v. Kaiser*, No. 25-CV07117-BLF, 2025 WL 2677125, at *8–9 (N.D. Cal. Sept. 18, 2025)). Because the Court orders Petitioner's immediate release, it need not address this question at this time. However, should Petitioner be re-detained unlawfully, Petitioner may request that the Court bar any transfer given its effect on Petitioner's ability to effectively litigate this case. *See Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *7 (N.D. Cal. Aug. 21, 2025) ("Here, the Court finds that equities strongly favor Petitioner remaining in this District pending the resolution of this matter because this will expedite resolution of this matter, provide Petitioner ready access to medical and legal services, and address concerns about the conditions of her detention."); *see also Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03229-JAK-MBK, 2025 WL 4065463, at *7 (C.D. Cal. Dec. 26, 2025), *report and recommendation adopted sub nom. Vilca Yataco v. Warden Adelanto Det. Facility*, No. 5:25-CV-03229-JAK (MBK), 2026 WL 158151 (C.D. Cal. Jan.

16, 2026) ("Petitioner's transfer would frustrate his ability to continue to litigate his habeas petition . . . . As such, it is reasonable to prevent Petitioner's transfer outside the District during the relatively short period it will take to resolve this petition.").

Moreover, while there is no present indication that the government will seek to remove Petitioner to a third country, any efforts to do so must comport with the applicable statutes and regulations as well as Petitioner's due process rights. *See* 8 U.S.C. § 1231(b)(3)(A); 28 C.F.R. § 200.1; 8 C.F.R. § 208.16-18, 1208.16-18; *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1142968, at *3 (D. Mass. Apr. 18, 2025) ("[T]hird-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings.").

Finally, the Court exercises its discretion and waives the bond requirement under Rule 65(c), because Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO or presented any evidence demonstrating that a bond is needed.

## IV.   CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**. The Court **ORDERS** as follows:

1. Petitioner shall be **IMMEDIATELY RELEASED** from custody pursuant to the terms of his preexisting OSUP;
2. Respondents are **ORDERED** to file reliable proof with this Court that Petitioner has been released by no later than February 23, 2026, at 8:00 a.m. Failure to do so may result in sanctions;
3. Respondents are **ENJOINED** from re-detaining Petitioner unless and until he is provided proper due process necessary for the revocation of an OSUP;
4. Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue. *See* L.R. 65-1. Respondents shall file any written response to the Order to Show Cause no later than **February 27, 2026**.

**Failure to file a response will be deemed consent to the issuance of the preliminary injunction.** Petitioner shall file a reply no later than **March 3, 2026**. If the parties agree that the TRO should be converted into a preliminary injunction and/or that dismissal of the habeas petition is warranted because the relief sought is now moot, they shall file a joint stipulation no later than **February 27, 2026**. The Court will order an OSC hearing only if necessary.

This TRO shall take immediate effect on **February 20, 2026**, and expires at 5:00 p.m. on **March 6, 2026**. The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

Dated: February 20, 2026

_____
HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE